UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CRYSTAL KAY YOUNG** | **CIVIL ACTION** |
| **VERSUS** | **CONSENT** |
| **COMMISSIONER OF SOCIAL SECURITY** | **NO. 19-62-RLB[1]** |

## RULING ON PLAINTIFF'S SOCIAL SECURITY APPEAL

Crystal Kay Young ("Plaintiff") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-6), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **ORDERS** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's appeal is **DISMISSED with prejudice**.

### I.  PROCEDURAL HISTORY

Plaintiff filed her application for disability insurance benefits (Tr. 15, 182-188) on May 13, 2016, alleging that she became disabled on April 1, 2016 because of a disabling condition, namely obesity, sciatic nerve, problems with knees, problems with back, bipolar, and glaucoma. (Tr. 210). Plaintiff's application was initially denied by an Administrative Law Judge ("ALJ"),

---
[1] Because both parties consented to proceed before a United States Magistrate Judge (R. Doc. 6), the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c)(1).

who first held an administrative hearing (Tr. 33-78) before issuing an unfavorable decision on March 7, 2018. (Tr. 12-32). Plaintiff's request for review of the ALJ's decision (180-181) was denied by the Appeals Council on January 23, 2019. (Tr. 1-6). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.　STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is

less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.  ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1

(Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff had not engaged in substantial gainful activity since May 13, 2016.

2. Plaintiff had the following severe impairments: morbid obesity, degenerative disc disease of the lumbar spine, lumbar dextroscoliosis, mild spondylolisthesis L4 on L5, status post-January 2016 left patella dislocation with residual pain, bilateral carpal tunnel syndrome, bipolar disorder (unspecified), PTSD (mild unspecified), and personality disorder (unspecified).

3. Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

4. Plaintiff had the residual functional capacity to perform sedentary work except she can occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, occasionally stoop, kneel, crouch, and crawl, can perform frequent bilateral handling and fingering, can perform simple, routine tasks, can have less than occasional interaction with the public, occasional interaction with supervisors, no close collaboration with coworkers that is working with things than with people, and no frequent changes in work setting.

5. Plaintiff had no past relevant work.

6. Plaintiff was born on October 10, 1985 and was 30 years old, which is defined as a younger individual age 18-44, on the date the application was filed.

7. Plaintiff had a limited education and was able to communicate in English.

8. Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled, whether or not the claimant has transferable job skills.

9. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

10. Plaintiff was not under a disability, as defined in the Social Security Act, since May 13, 2016, the date the application was filed.

## IV. DISCUSSION

### A. ALJ's Decision at Step Three

Plaintiff's arguments begin at step 3 of the sequential evaluation process, wherein she asserts that the ALJ failed to consider whether her severe impairment of obesity met or medically equaled a Listing. (R. Doc. 9 at 4-8). Plaintiff's argument centers around her contention that her obesity is medically equivalent to a listing impairment because of her inability to ambulate effectively. (R. Doc. 9 at 5). The ALJ determined, at step two, that Plaintiff's obesity was a severe impairment. (Tr. 17). At step three, the ALJ specifically considered whether Plaintiff's obesity met or medically equaled a listing, concluding that "the signs, symptoms and laboratory finding of her obesity are not of such a severity as found in any listing," and noting that he considered the functional limitations due to Plaintiff's obesity in his residual functional capacity assessment. (Tr. 18).

With regard to obesity and the inability to ambulate effectively, SSR 02-1p, 2002 WL 34686281, at *5 (Sep. 12, 2002), provides as an example, that obesity by itself may be medically equivalent to a listed impairment "if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it maybe substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria),

with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence." The ALJ references SSR 02-1p in his step three analysis with regard to obesity, and discusses his findings on Plaintiff's ability to ambulate effectively in his RFC assessment. (Tr. 18, 21, 22, 23).

Plaintiff has the burden of establishing that she meets or medically equals a Listing. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); 20 C.F.R. § 404.1520(d). As defined by the Listing cited in SSR 02.1p, the inability to ambulate effectively means "an extreme limitation of the ability to walk." 20 C.F.R. pt. 404, Subpt. P, App. 1, § 1.00B2b1. Furthermore, "examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker… the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." 20 C.F.R. pt. 404, Subpt. P, App. 1, §1.00B2b2.

Substantial evidence supports the ALJ's finding that Plaintiff suffers from a severe impairment of obesity, and no party challenges that finding. The question then becomes whether substantial evidence supports the ALJ's finding that Plaintiff did not suffer from an inability to ambulate effectively that would cause her obesity to meet or medically equal a Listing. Plaintiff reported in her disability application that she uses a walker, a wheelchair, and a cane. (Tr. 226). There is no other evidence of Plaintiff using a wheelchair or a cane in the record, however, so the Court will focus the analysis on Plaintiff's purported use of a walker.

Plaintiff was reported to make no use of assistive devices in her April 20, 2015 visit at the Margaret Dumas Mental Health Center. (Tr. 370). The first note of the use of an assistive device in the objective medical records is from a September 20, 2016 examination by Dr. Francis,

wherein he notes that she reported using a rolling walker for support and balance because of her left knee. (Tr. 497, 500). However, in his functional assessment at the end of the report, Dr. Francis makes no finding that Plaintiff requires the use of a walker, and concludes that she is able to walk short distances, operate foot pedals, bend, squat, stoop, crouch, kneel, crawl, balance, climb, twist, reach or turn intermittently with difficulties, and that she "is able to work at this time at the appropriate type job within the above stated physical capabilities." (Tr. 503). In a psychological consultation performed by Dr. Durbin the following day, September 21, 2016, Plaintiff was reported to have "normal gait and posture" and "did not use any other devices." (Tr. 505).

Following those instances, the next time the medical records references an assistive aid in connection with the physical therapy following a left patella dislocation resulting from a fall. Plaintiff's first physical therapy session was on February 9, 2017, which notes that she "ambulates with rollator at times." (Tr. 572). Only a month later, at her fourth physical therapy visit on March 10, 2017, it was reported that Plaintiff was "No longer ambulating with rollator" and "able to ambulate." (Tr. 583). When Plaintiff was discharged to Home Exercise Plan on April 7, 2017, the physical therapy records note that Plaintiff reported knee pain of 0/10 for the past two weeks, and that she ambulated in the grocery store without pain. (Tr. 590). Shortly thereafter, on April 17, 2017, Plaintiff had an appointment at the Margaret Dumas Mental Health Center, wherein Dr. Calhoun noted that Plaintiff "uses no mechanical devices to assist walking." (Tr. 564).

By contrast, the only evidence cited by Plaintiff in support of her contention that she was unable to ambulate effectively comes from her testimony at the administrative hearing. "[S]ubjective symptoms alone, absent some indication that they are supported by objective

7

medical evidence, fail to support a disability finding." *Salgado v. Astrue*, 271 Fed. App'x 456, 460 (5th Cir. 2008), citing 20 C.F.R. § 404.1529.While Plaintiff testified at the December 7, 2017 administrative hearing that she uses riding carts when she goes shopping and has her rolling walker with her when she goes out, the objective medical records do not support these statements and in part directly contradict them. Instead, there is no prescription or recommendation for the use of a walker, and the objective medical records reveal only two acute instances of the use of a rolling walker, flanked by evidence of ambulation without an assistive device. Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's obesity did not meet or medically equal a listing, and Plaintiff has not met her burden of proving otherwise.

    **B.    ALJ's RFC Assessment**

Plaintiff's second argument is that the ALJ erred in his RFC assessment by not properly considering Plaintiff's carpal tunnel syndrome and her inability to bend or stoop up to 1/3 of a day. (R. Doc. 9 at 8-11). The ALJ concluded that Plaintiff had the residual functional capacity to perform sedentary work except she can occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, occasionally stoop, kneel, crouch, and crawl, can perform frequent bilateral handling and fingering, can perform simple, routine tasks, can have less than occasional interaction with the public, occasional interaction with supervisors, no close collaboration with coworkers that is working with things than with people, and no frequent changes in work setting. (Tr. 20). In coming to that conclusion, the ALJ summarized the legal framework for his decision. The ALJ then discussed Plaintiff's testimony at the administrative hearing, and the objective medical records before discussing his findings and underlying reasoning. (Tr. 26).

The objective medical evidence reveals that Plaintiff complained of tingling and numbness in her right hand over the past three months at an October 4, 2017 appointment with

Dr. Watts. (Tr. 631). Those records indicate Plaintiff reporting that she had been diagnosed with carpal tunnel syndrome in the past, and had previously worn wrist braces, but lost them in the flood. (Tr. 631). Dr. Watts noted a positive Tinel's on a right extremity and recommended follow up with a neurologist, noting that the nurse was able to get Plaintiff an appointment in January, but there is no evidence that Plaintiff followed through with this recommendation. (Tr. 632-33).

Prior medical evidence in the record from 2015 through 2017 does not support Plaintiff's October 2017 assertion that she had previously been diagnosed with carpal tunnel syndrome and was prescribed braces, however. In the disability evaluation completed by Dr. Francis on September 20, 2016, Plaintiff reported back and knee pain, various symptoms regarding her mental health, and glaucoma. (Tr. 497-98). Dr. Francis's assessment noted that Plaintiff retained full range of motion in both wrists, and that she "has the full use of the upper extremities for carrying and there are no limitations associated with the use of the [rolling walker]." (Tr. 500, 501). He also noted that her grip strength was 5/5 with fine dexterous ability and strength, and no paresis, tremor, paralysis, or atrophy. (Tr. 502). His impression rendered five problems— glaucoma, chronic low back pain with lower extremity radiculopathy, chronic bilateral knee pain, bipolar disorder, and severe morbid obesity. (Tr. 502). Dr. Francis's functional assessment concluded that Plaintiff was "able to use hand for repetitive actions such as fine manipulation." (Tr. 503). Plaintiff did not report any difficulty using her hands in her May 23, 2016 disability application (Tr. 225) and did not indicate the use of any brace/splint (Tr. 226).

Plaintiff testified at the administrative hearing that she wears braces at night when she is sleeping, that she experiences tingling and numbness at time, and drops things because her thumb will give out, especially on her left hand. (Tr. 57). She reported that she dropped "quite a few of the containers and things" while she was working at McDonald's, which was on and off

9

for ten years through 2010, though the first evidence of reports of any issues was October of 2017 with Dr. Watts. (Tr. 45, 57, 633).

As the ALJ notes, however, these statements are not supported by the objective medical records, or records of Plaintiff's complaints of symptoms or functional limitations therein. Plaintiff also testified that, while her brother cleans everything and cooks because she has to sit down, she folds clothes because she "can sit there and fold them." (Tr. 42). So, notwithstanding a diagnosis of bilateral carpal tunnel syndrome, she has the ability to fold clothes. When specifically asked about pain, Plaintiff references only her knees, lower back, and hips. While Plaintiff seems to suggest that, because there is no evidence contradicting her testimony at the administrative hearing, the ALJ erred in not assessing more significant functional limitations in his RFC attributable to her bilateral carpal tunnel syndrome, that position fails to account for the fact that Plaintiff carries the burden at steps 1-4 of the sequential evaluation process. Plaintiff fails to demonstrate through objective evidence any additional functional limitations arising from the bilateral carpal tunnel syndrome diagnosis beyond those included in the ALJ's RFC determination.

Substantial evidence supports the ALJ's conclusion with regard to Plaintiff's ability to use her hands, primarily because there is a lack of evidence supporting any functional limitations as a result of her bilateral carpal tunnel syndrome diagnosis. A diagnosis is only one part of the equation when it comes to the RFC assessment. In addition to a diagnosis, there must be accompanying functional limitations that have an effect on a claimant's ability to do work activities. *See, e.g., Dise v. Comm'r of Soc. Sec.*, 2015 WL 566862, at *9 (W.D. La. Feb. 10, 2015) ("As noted by the Commissioner, plaintiff fails to demonstrate how a 'diagnosis' of scoliosis translates into a functional limitation."); *Sollien v. Colvin*, 2014 WL 1012515, at *6

(N.D. Tex. Mar. 14, 2014) ("[T]he diagnosis of a condition, by itself, is not evidence of a functional limitation."); *Brock v. Astrue*, 2011 WL 4348305, at *3 (N.D. Tex. Sep. 16, 2011) ("Although plaintiff was diagnosed with osteoarthritis and complained of knee pain [], the diagnosis of a condition, by itself is not evidence of a functional limitation."

SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996), requires an ALJ to consider "only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." Further, "[w]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." SSR 96-8p at *1. In addition, where an ALJ does not perform a function-by-function analysis, but considers all of the medical records and no records support a contrary conclusion, the ALJ has complied with the requirements of SSR 96-8p. *See, e.g., Gonzales v. Colvin*, 2016 WL 107843, at *7-8 (N.D. Tex. Jan. 11, 2016).

Plaintiff has pointed to no objective medical evidence of functional limitations attributable to her bilateral carpal tunnel syndrome that was not considered by the ALJ. Further, the Court's review of the record reveals no additional evidence of functional limitations that was not considered by the ALJ. Without substantial evidence supporting functional limitations attributable to her carpal tunnel syndrome, Plaintiff has failed to meet her burden with regard to this argument.

Plaintiff also suggests that the ALJ committed error in his RFC assessment with regard to her ability to bend and stoop. (R. Doc. 9 at 10). The ALJ found that Plaintiff could occasionally stoop, kneel, crouch, and crawl. (Tr. 26). Plaintiff asserts that she has a complete inability to

bend or stoop, referencing her testimony at the administrative hearing, as well as medical records showing chronic lower back pain including lower extremity radiculopathy, bilateral knee pain, closed patellar dislocation limiting her range of motion, and degenerative changes in her right knee. (R. Doc. 9 at 11). The Commissioner responds that Plaintiff has failed to show actual functional limitations stemming from her pain, relying only on subjective statements alone. (R. Doc. 11 at 11).

Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). "An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations." SSR 96-9P, 1996 WL 374185, at *8 (July 2, 1996). The ability to stoop incorporates the ability the bend. *See Frustaglia v. Secretary of Health and Human Services*, 829 F.2d 192, 195 (1st Cir. 1987) (stooping means to "bend forward from the waist"). At the same time, a "complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." SSR 96-9p at *8.

Therefore, an inability to stoop or bend for *prolonged* periods of time would not significantly erode the occupational base for sedentary work, as Plaintiff claims. Instead, only a "complete inability to stoop would erode the unskilled sedentary occupational base." SSR 96-9P, 1996 WL 374185, at *8 (July 2, 1996). Plaintiff's argument regarding her inability to stoop or

bend fails for the same reasons addressed previously with regard to her bilateral carpal tunnel syndrome. Plaintiff bears the burden of proving a complete in ability to stoop or bend, and substantial evidence supports the ALJ's finding that Plaintiff was limited only to occasional stooping or bending.

Plaintiff testified at the administrative hearing that her brother cleans everything because she cannot bend down or stoop, that if she risks falling if she leans over (Tr. 42, 43, 61). In her Adult Function Report dated September 21, 2016, Plaintiff reported that she has problems with bending, but that her daily activities included showering, brushing her teeth, dressing, fixing something to eat, and washing clothes, including a note that she took breaks "very frequently due to shortness of breath" and an inability to stand more than about 15 minutes. (Tr. 221, 225). Dr. Francis' Functional Assessment provides that Plaintiff is able to bend, squat, stoop and crouch, among other things, "intermittently" but with "some difficulties." The Consultative Examination dated October 6, 2016, indicated some postural limitations and limited Plaintiff to only occasional stooping or bending at the waist. (Tr. 111).

The objective medical records reveal that Plaintiff reported lower back pain on a couple of occasions, and she was treated for a patellar dislocation with physical therapy. (Tr. 478, 497, 571). Notwithstanding those instances, there is very little evidence in the objective medical records of any functional limitations resulting from the severe impairments assessed by the ALJ of lower back pain, or diagnoses of degenerative disc disease, lumbar dextroscoliosis, and mild spondylolisthesis L4 on L5, beyond recordations of Plaintiff's own reports and Plaintiff's own testimony at the administrative hearing.

Substantial evidence supports the ALJ's findings that Plaintiff retained the residual functional capacity to bend and stoop occasionally, or up to 1/3 of a normal workday. Plaintiff

has failed to carry her burden as to her objections to the ALJ's RFC assessment of Plaintiff's ability to bend and stoop.

C. ALJ's Consideration of VE Testimony

Plaintiff's third argument is that the ALJ erred by failing to account for the VE's testimony that there would be no jobs available in the national economy for a hypothetical person who, among other assessments, would likely miss at least three days of work per month and would need three additional 15-minute breaks. (R. Doc. 9 at 11-16). Within this section of Plaintiff's briefing, she also appears to be arguing that the ALJ failed to perform a "subsequent search" of the record after posing the hypotheticals to the VE at the administrative hearing, which subsequent search would have revealed sufficient record evidence to support the assumptions provided by the ALJ to the VE in the hypothetical. (R. Doc. 9 at 13).

The ALJ's RFC did not include a limitation that Plaintiff would likely miss at least three days of work per month or would need three additional 15-minute breaks. Therefore, the ALJ's failure to rely on the VE's testimony with regard to this limitation is immaterial. "It is well-established law, however that the ALJ need not rely on VE testimony that is based on evidentiary assumptions that the ALJ later concludes is unsupported by the objective medical evidence." *Brooks v. Astrue*, 2012 WL 3644743, at *7 (E.D. La. Aug. 9, 2012) (citing *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985)). Because the ALJ did not assess these limitations in his RFC assessment of Plaintiff, he committed no error in not relying on the corresponding testimony of the VE.

Further, Plaintiff's reliance on the case of *Owens v. Heckler*, 770 F.2d 1276 (5th Cir. 1985), for her proposition that "whether the ALJ is required to consider a VE's response to a hypothetical is contingent upon a <u>subsequent</u> finding that the assumptions contained in the

hypothetical are not factually supported" is misplaced. In *Owens*, the Fifth Circuit stated that "[o]n remand, the ALJ explained the expert's opinion was irrelevant because it was based on a hypothetical question composed of assumptions subsequently found unsupported by medical evidence," and then noted that "[t]he hypothetical assumed the existence of Owens' complaints… However, on remand the AJ explained her ultimate findings did not substantiate these subjective complaints of pain and allegations of functional limitation."

The Court does not interpret *Owens* to dictate when in the decision-making process an ALJ must determine the RFC he intends to render, as Plaintiff suggests. The RFC determination is within the sole responsibility of the ALJ, and Plaintiff provides no authority—statutory, regulatory, or jurisprudential—dictating the order in which an ALJ must make his decisions or perform his analysis. Whether an ALJ questions a VE regarding a single hypothetical RFC that he has already determined to be applicable, through review of the record and claimant testimony, and relies upon the VE's response therein, or whether an ALJ questions a VE regarding several hypothetical RFCs, and later decides which is supported by the record, and relies upon the VE's response to that hypothetical, makes no difference in the eyes of the Court. That is to say, the Court interprets the use of the word "subsequent" in the *Owens* decision, and similarly the phrase "later concludes" in the *Brooks* decision to simply refer to the fact that the ALJ's decision is rendered after the administrative hearing.

However, where an ALJ assigns an RFC that erodes the occupational base, and he uses his discretion to consult a VE, he must rely on that VE's testimony with regard to whether there are jobs available in the national economy considering the eroded RFC. Here, the ALJ did not find in his RFC assessment that Plaintiff's sedentary RFC was eroded by any requirement that she be permitted to miss at least three days for work per month and need three additional 15-

minute breaks in a regular day of work. Therefore, the ALJ need not rely on the VE's testimony as to that hypothetical.

Notwithstanding the foregoing, the question of whether substantial evidence supports the ALJ's RFC omitting a need for Plaintiff to miss at least three days of work in a month, and take three additional 15-minute breaks in a workday, is a separate objection advanced by the Plaintiff to be considered by the Court.

Plaintiff testified at the administrative hearing that she tried a sitting job after 2010 and "couldn't even show up [her] first few days of work from the back pain," so she was let go, and that she was fired at her bowling center job in part because she was not reliable showing up to work. (Tr. 47). When asked whether she would be able to perform a job if asked to go back, Plaintiff replied that she would not, and attributed her answer in part to her pain causing her to not be able to get out of bed some days, and struggling to get to the restroom. (Tr. 54). She testified that these days occur 3-4 days a week. (Tr. 55). Plaintiff also reported taking anywhere from 25 to 30 minutes to use the bathroom. (Tr. 56).

Notwithstanding this testimony, the ALJ found that "the claimant's symptoms are not as severe as she alleged," and incorporated no additional breaks during the workday or missed days of work in his RFC assessment. (Tr. 22). The ALJ noted Plaintiff's testimony regarding the length of time it takes her to use the restroom, but found that her statements about the intensity, persistence, and limiting effects of her symptoms—including pain—were not consistent with the evidence as a whole. The ALJ noted that she has never been prescribed narcotic medication, injections, or physical therapy for her lumbar spine, that she admitted she has only taken over the counter medication, and has not followed up with pain management. (Tr. 22). He also found that, although obese, Plaintiff has failed to follow a prescribed diet or take related medication, and

16

repeated physical examinations found normal muscle strength and normal sensory examination with no evidence of muscle atrophy or synovial thickening, warmth, deformity or inflammation in the joints of the upper or lower extremities, though had been found to have an antalgic gait on at least one occasion. (Tr. 22).

The Court finds that the lack of workday breaks or missed days of work in the ALJ's RFC assessment is supported by substantial evidence in the record. Plaintiff testified primarily to the need to be able to sit throughout a workday, including particular features a chair would need to have as well as surroundings for her to assist herself in getting out of the chair when needed. When asked what accommodations an employer would have to make for her, Plaintiff stated that she would need a high-rise chair with no arms, and a wall directly behind her, a high-rise seat in the bathroom with handicap railing. (Tr. 61). The need for a raised toilet seat and handicapped bars is corroborated in her disability application. (Tr. 221).

As the ALJ notes, there is very little objective medical evidence of treatment for pain, including a lack of any narcotic medications, injections, or physical therapy, which is also corroborated by her testimony. (Tr. 22, 55). In a Disability Assessment dated September 20, 2016, Dr. Francis noted pain in Plaintiff's neck, back, hip, shoulder, knee, feet, and hand, but found normal curvature of her spine, negative straight leg raise, crepitus bilateral knees, but no instability, deformity, spasms, rubor, calor, dolor or tumor of any boners, joints, or muscles, and that she was able to get on and off the exam table, though with difficulty. (Tr. 500). He also found that she had normal range of motion of her cervical spine, lumbar spine, shoulders, elbows, wrists, hips, ankles, and right knee, with diminished range in her left knee only. (Tr. 501). The most recent physical evaluation in the objective medical records is from a May 4, 2017 appointment with Dr. Watts at Bella Family Medical, wherein she noted Plaintiff was not

currently taking any medications, and her gait was normal. (Tr. 604-605). Also worth noting is that there is no evidence in the objective medical records of any missed medical appointments due to prohibitive pain, and Plaintiff reports in her Adult Function Report dated September 21, 2016 that she can prepare her own meals daily, do laundry, and clean, that she can read, listen to music, and play video games every day, and spends time with others in person, on the phone, or on Facebook every day. (Tr. 222, 224).

Based on the Court's review of the objective medical records, substantial evidence as summarized above, supports the ALJ's decision to not include within his RFC assessment a requirement that Plaintiff be able to take three additional 15-minute breaks or miss an additional three days of work per month. Plaintiff's objection on these grounds is without merit.

## V.     Conclusion

For the reasons given above, **IT IS ORDERED** that the Commissioner's decision is **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on February 5, 2020.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**